IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ETTA RENEE HOLMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CIV-11-0397-HE |
| | ) | |
| THE BOARD OF COUNTY COMMISSIONERS ON BEHALF OF THE CLEVELAND COUNTY CLERK'S OFFICE, ET AL., | ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER**

Plaintiff Etta Renee Holmes was formerly employed as a deputy clerk by the County Clerk of Cleveland County, Oklahoma. She was terminated in 2011. She has sued the County for disability discrimination under the Americans with Disabilities Act of 1990 ("ADA") and similar provisions of Oklahoma state law, 25 Okla. Stat. § 1901, *et seq.* She also asserts claims under Title II of the ADA and for interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*[1]

Defendant has moved for summary judgment, which is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Plaintiff has also moved for

---

[1]*The nominal defendant in this case is the Board of County Commissioners of Cleveland County, reflecting the manner in which a county may be sued under Oklahoma law. However, in substance, Cleveland County is the defendant and further references here to "defendant" have that meaning. As pertinent here, the County acted largely through the actions of the County Clerk or others acting on her authority.*

partial summary judgment on her disability discrimination claim. "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (citation omitted). The motions are at issue.

As to each motion, the court has viewed the evidence and any reasonable inferences that might be drawn from it in the light most favorable to the nonmoving party, and concludes that defendant's motion should be granted in part and denied in part, and that plaintiff's motion should be denied.[2]

## Background

The background facts are substantially undisputed. Plaintiff began working as a deputy clerk in the County Clerk's office on December 11, 2006. Tammy Belinson (formerly Tammy Howard) is the County Clerk. Plaintiff's job duties and responsibilities were to index daily documents. Accuracy in inputting the data was an essential function of the job.

In 2008, plaintiff had back surgery, after which her doctor imposed a 30-pound lifting restriction for her return to work. Following that surgery, plaintiff used a cane or walker intermittently while at work, although plaintiff contends she always used assistive devices to walk distances.

---

[2]*Plaintiff has moved to strike statements in certain affidavits submitted by defendant which plaintiff views as inconsistent with the sworn testimony of the particular affiant. The motion will be denied, as any inconsistency is not so clear as to warrant striking the affidavit altogether. To the extent there are arguable differences in the particular statements, the court has relied, as to plaintiff's motion, on the deposition statements.*

During the period of July and August of 2010, plaintiff began displaying characteristics of intoxication or impairment while at work. At times, she exhibited slurred speech or other behavior suggesting an altered state or being "out of it." Plaintiff does not dispute these facts, but indicates that her medications were changed in approximately July and that she did not tolerate the change well. Plaintiff's last day of work was August 16, 2010. Defendant received a note on August 18, 2010, from plaintiff's doctor requesting that she be excused until August 25, 2010, for medical reasons. Belinson received a phone call from plaintiff on August 23, during which plaintiff appeared to be in an intoxicated state. Defendant received another note from plaintiff's doctors on August 24, 2010, advising that plaintiff was under their care and that she could return to work on August 30 with a five-pound lifting restriction and the use of a wheelchair. The note also advised that plaintiff's medication should not affect her work.

Defendant subsequently requested that plaintiff fill out an Employer Medical Authorization form, which plaintiff did at a meeting on August 30. Defendant also sent a letter to plaintiff's doctors indicating that the information previously provided was insufficient and incomplete, and requesting more detailed information about plaintiff's medications, their side effects, and any recommendations or restrictions. It also sought information as to the length of time plaintiff would be on medication or in need of a wheelchair. Plaintiff's doctor sent a letter on August 26 advising that the pain medication that caused plaintiff's problems had been discontinued and that she was currently able to do her job. The doctor also advised that she no longer had any slurring of speech and provided

the requested list of medications. The letter indicated that she would need a wheelchair to help prevent falls for the foreseeable future, should not lift over twenty pounds or anything over ten pounds above her head, and should avoid stooping or bending more than five times an hour. Some time later, defendant sent a letter to plaintiff's doctors stating that it was requiring a complete release for plaintiff to return to work, certifying she was free of narcotic medications, and that she would not be able to return without that certification [Doc. #80, Ex. 24].

Plaintiff was placed on unpaid administrative leave from August 17, 2010, until she was terminated on May 1, 2011. Defendant contends that plaintiff refused to participate in a fitness for duty exam, but it is disputed at what point that exam was actually requested and required. Additional disputed facts are addressed below as appropriate.

## Analysis

### A. Disability Discrimination

The ADA prohibits a covered employer from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Although it is not apparent from the somewhat scattered and unfocused discussion of the applicable standards in defendant's brief, ADA discrimination claims are ordinarily evaluated, in the summary judgment context, using the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Carter v. Pathfinder Energy Servs.</u>, 662 F.3d 1134, 1141 (10th Cir. 2011).[3]

---

[3]*This framework is used when plaintiff relies on indirect evidence of discrimination. Here, defendant's refusal to allow plaintiff's return to work due to the pain medications she was taking*

4

Under this framework, a plaintiff must first establish a prima facie case of discrimination by showing that: (1) she is a disabled person as defined by the ADA; (2) she was qualified, with or without reasonable accommodation, to perform the essential functions of her job; and (3) her employer discriminated against her because of her disability. Robert v. Bd. of Cnty. Comm'rs, 691 F.3d 1211, 1216 (10th Cir. 2012). If plaintiff establishes a prima facie case, the burden then shifts to defendant to articulate a legitimate, non-discriminatory reason for its actions. Plaintiff would then be required to identify evidence suggesting the employer's stated reason is in fact a pretext designed to mask the prohibited discrimination. Carter, 662 F.3d at 1141.

Here, defendant appears to principally challenge the first element of the prima facie case — whether plaintiff was disabled within the meaning of the ADA. Under the ADA, the term "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). Plaintiff's claim is judged under the provisions of the ADA Amendments Act of 2008 ("ADAAA"), which explicitly lowered the standard for what constitutes a substantial limitation and broadened the scope of protection under the ADA, among other changes. *Id*. § 12102(4); Pub. L. No. 110–325, 122 Stat. 3553 ("[T]he question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis."). Further, "[t]he

---

*in connection with her "disability" arguably constitutes direct evidence of discrimination, but it is unnecessary to resolve the question in light of the application of the McDonnell Douglas standard.*

determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . medication, medical supplies, equipment, or appliances, . . . [or] mobility devices." 42 U.S.C. § 12102(4)(E)(i). "Major life activities" now include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," as well as the operation of major bodily functions. *Id.* § 12102(2).

Here, there is evidence that, at the time defendant placed plaintiff on involuntary unpaid administrative leave and refused to allow her to return, as a result of her back problems,[4] plaintiff had trouble lifting, walking, bending, and sleeping. This supports an inference that the referenced impairments "substantially limited" one or more major life activities within the meaning of the ADAAA.

Further, there is evidence that defendant regarded plaintiff as "disabled" within the meaning of the ADA. Under the ADAAA, an individual is "regarded as" disabled "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity*." *Id.* § 12102(3)(A) (emphasis added); *see also* Steffen v. Donahoe, 680 F.3d 738, 743-44 (7th Cir. 2012) ("Prior to the Amendments, an employee was not 'regarded as' disabled . . . unless his employer believed

---

[4]*Plaintiff refers to her disability as degenerative back disease.*

6

that impairment substantially limited the employee in a major life activity. The Amendments changed this standard . . . ." (citations omitted)); 29 C.F.R. § 1630.2(l)(1) ("Prohibited actions include but are not limited to refusal to hire, demotion, *placement on involuntary leave*, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment." (emphasis added)). Here, there is evidence satisfying that standard.

There is also evidence sufficient to establish the second element of plaintiff's prima facie case. Two criteria are considered when determining whether a plaintiff is a "qualified individual." Robert, 691 F.3d at 1216. First the court assesses whether the plaintiff's "impairment prevented her from performing the essential functions of her job." *Id*. If it did, the court must determine whether the plaintiff might have been able to perform those functions if her employer had provided her with a reasonable accommodation. *Id*. The parties agree that the essential functions of plaintiff's job included sitting, typing, and accurately inputting data. There is evidence that plaintiff was qualified to perform those essential functions before her medications were changed in July, and that she was qualified to perform those functions again after the medications were changed again in mid-August. To the extent that allowing plaintiff to return to work while using narcotic medications is viewed as an accommodation,[5] a justiciable question exists as to whether such would be a

---

[5]*There is no evidence that defendant had an explicit "no narcotic" policy at the workplace apart from plaintiff's particular situation. See* Lively v. PSI Energy, Inc., *1:06-CV-1377-SEB/JMS, 2007 WL 4438872, at \*8-9 (S.D. Ind. Dec. 17, 2007) (holding that there was a justiciable question as to whether modifying the employer's "no narcotic" policy was a reasonable accommodation where the plaintiff presented a medical evaluation that his use of the prescribed narcotics did not*

reasonable accommodation.

Insofar as the third element is concerned, there is evidence from which a fact-finder might conceivably find discrimination based on plaintiff's disability, including that defendant explicitly refused to allow her to return to work until she was narcotic-free, despite her doctors' indication that she could function appropriately on the medications.

Though not altogether clear from defendant's brief, it apparently suggests the termination to have been based on either plaintiff's inability to perform the essential functions of her job or her refusal to submit to a fitness for duty examination. Either explanation qualifies as a legitimate, non-discriminatory reason.

In the context of defendant's motion, neither party makes an effort to discuss evidence of "pretext" in any explicit sense. In the absence of any meaningful showing in that regard, the court regards the evidence establishing the prima facie case as also sufficient to constitute the necessary evidence of pretext.

Defendant has not shown a basis for summary judgment in its favor as to the ADA discrimination claim. As to plaintiff's motion, many of the same factual disputes as prevent summary judgment for the defendant also preclude entry of partial summary judgment for the plaintiff. Both motions will be denied as to the ADA discrimination claim. Further, as the parties have offered no meaningful discussion as to why the result would be different as to the state law claim, summary judgment as to that claim, if sought,[6] is similarly denied.

---

*impair his cognitive abilities).*

[6] *It is not clear that defendant's motion was intended to challenge the state claim.*

B. Title II - failure to accommodate handicap

Defendant also moved for summary judgment on plaintiff's Title II claim, which "forbids discrimination against the disabled in public services, programs, and activities" and specifies that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Guttman v. Khalsa, 669 F.3d 1101, 1112 (10th Cir. 2012) (quoting 42 U.S.C. § 12132). In this regard, plaintiff appears to argue that defendant failed to provide appropriate handicapped parking to allow her to access the building. However, it is undisputed that numerous handicap-designated spaces were provided at the courthouse. Moreover, plaintiff acknowledges as a matter of fact that the courthouse was "fully handicapped accessible." She provides no authority to support her apparent contention that a handicapped space must be marked for employees only, as opposed to one for handicapped persons generally, nor does she offer any evidence that the county ever sought to charge her for using the available spaces. Similarly, she does not identify any authority suggesting that a building otherwise fully accessible should be viewed as lacking if some of the doors do not automatically open.[7]

As no basis for violation of the Title II standards has been shown, summary judgment will enter for defendant as to that claim.

---

[7]*Plaintiff argues the door into the clerk's office did not open automatically, but did not dispute it was readily seen by others in the immediate area, who could assist in opening it if necessary.*

C. FMLA Interference and Retaliation

Plaintiff also asserts FMLA interference and retaliation claims. The FMLA "makes it unlawful for an employer to interfere with, restrain, or deny the exercise or attempt to exercise any right provided under the FMLA." Brown v. ScriptPro, LLC, 700 F.3d 1222, 1226 (10th Cir. 2012) (citing 29 U.S.C. § 2615(a)(1)). To establish an interference claim, an employee must show: "(1) [s]he was entitled to FMLA leave, (2) an adverse action by [her] employer interfered with [her] right to take FMLA leave, and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights." Id. (quoting Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1180 (10th Cir. 2006)); Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1287 (10th Cir. 2007) ("In order to satisfy the second element of an interference claim, the employee must show that she was prevented from taking the full 12 weeks' of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave."). A plaintiff must show some prejudice resulting from the alleged violation. Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002) ("To prevail under the cause of action set out in § 2617, an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation . . . .").

Here, plaintiff has effectively confessed the FMLA claim, arguing only that defendant didn't appropriately advise her of her rights. She ignores the requirement for a showing of prejudice and does not dispute that she received the full 12 weeks leave she was guaranteed

by the FMLA and that her health insurance coverage under the employer's group plan was maintained at the county's expense during her time off. No basis for a FMLA claim has been shown.

Defendant is also entitled to summary judgment on plaintiff's FMLA retaliation claim. FMLA retaliation claims are subject to the McDonnell Douglas burden-shifting analysis. Brown, 700 F.3d at 1229. To establish a prima facie case of FMLA retaliation, the plaintiff must show "(1) the employee engaged in a protected activity, (2) the employer took an action that a reasonable employee would have found materially adverse, and (3) there is a causal connection between the protected activity and the adverse action." Id. (citation omitted). The burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for the action. Id. Finally, the burden shifts back to the employee to show that the employer's reasons for its action are pretextual. Id.

Here, plaintiff has not pointed to any action on her part which would clearly qualify as protected activity. It is undisputed that she did not request FMLA leave in any explicit sense. However, even if the existence of protected activity (as well as the other prima facie elements) be assumed (and defendant having articulated a non-retaliatory reason for plaintiff's termination), she has presented no evidence (or argument, for that matter) which would support a conclusion of pretext. Defendant is entitled to summary judgment on this claim.

## Conclusion

Plaintiff's motion for partial summary judgment [Doc. #80] is **DENIED**. Defendant's

motion for summary judgment [Doc. #78] is **GRANTED** as to plaintiff's FMLA interference and retaliation claims and her Title II claims, but otherwise **DENIED**. Plaintiff's motion to strike or disregard contradictory affidavit affirmations [Doc. #81] is **DENIED**. The case remains for trial as to the ADA discrimination claim and the parallel claim under state law.

**IT IS SO ORDERED**.

Dated this 28th day of May, 2013.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE